AO 106 (Rev. 01/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of Kansas

**FILED**

U.S. District Court
District of Kansas

JUL 0 6 2016

Clerk, U.S. District Court
By_____Deputy Clerk

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*
INFORMATION ASSOCIATED WITH
"jones_shawn72@yahoo.com"
THAT IS STORED AT PREMISES CONTROLLED BY
YAHOO! INC.

)
)
)
)
)
)

Case No.  16-M-6092-01-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe property to be searched and give its location):*

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § _2241(a), 2251 and 1512_, and the application is based on these facts:

☑ Continued on the attached sheet.  (see attached affidavit of probable cause)

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

J. Reese Popst, FBI

*Printed name and title*

Sworn to before me and signed in my presence.

Date: _7-6-2016_

*Judge's signature*

City and state: Wichita, KS

Gwynne E. Birzer, United States Magistrate Judge

*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
"jones_shawn72@yahoo.com"
THAT IS STORED AT PREMISES
CONTROLLED BY YAHOO! INC.
701 FIRST AVENUE, SUNNYVALE, CA
94089

Case No. 16-M-6092-01-GEB

## AFFIDAVIT

I, J. Reese Popst, being duly sworn, depose and state:

## INTRODUCTION

1.      I am employed as a Special Agent with the Federal Bureau of Investigation (FBI). I have
been employed as a Special Agent since February 18, 2016. I am currently assigned to the
Wichita, Kansas, Resident Agency, Kansas City Division. Prior to service with the FBI, I was a
Certified Public Accountant working in public accounting specializing in financial audit. As a
Special Agent of the FBI, I am authorized to investigate violations of laws of the United States,
and I am a law enforcement officer with authority to execute arrest, search, and seizure warrants
under the authority of the United States. I have participated in a variety of criminal
investigations, to include crimes against children, white collar crimes, and various non-violent
Federal crimes.

2.      I make this affidavit in support of an application for a search warrant for information
located in or associated with a certain e-mail account, jones_shawn72@yahoo.com, that is
stored at premises owned, maintained, controlled, or operated by Yahoo!, an email provider
headquartered at 701 First Avenue, Sunnyvale, California 94089.

3.     The information in this affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by other law enforcement investigators and witnesses, involved in this investigation.  Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me concerning this investigation.  Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant to search for and seize instrumentalities, fruits and evidence of violations of:

    a.     Title 18, United States Code, 1512(b)(3) and (d), relating to tampering with a witness or victim;

    b.     Title 18, United States Code, Section 2241(a), relating to aggravated sexual abuse committed by use of force;

    c.     Title 18, United States Code, Section 2251, relating to the production of child pornography.

which may be located in or associated with the **jones_shawn72@yahoo.com** e-mail account.

## LOCATION TO BE SEARCHED

4.     The location to be searched is the premises controlled by Yahoo! Inc., headquartered at 701 First Avenue, Sunnyvale, California 94089, for information associated with the email address **jones_shawn72@yahoo.com**, an email address is known to be used by the Random Shane Smith, the subject of the investigation.  Yahoo! is the e-mail service provider for this email account and they maintain this account on their servers for use by their customers.

## AUTHORITY

5.     This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo!, to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the account, including the contents of communications.

6.     The government may use a search warrant to obtain subscriber information and records, including the contents of the subscriber's account(s). 18 U.S.C. § 2703(a), (b)(1)(A), (c)(1)(A). Unlike traditional Federal Rule of Criminal Procedure (Rule 41) warrants, warrants issued pursuant to section 2703 may be used to compel records held in another district, so long as the warrant is issued by a court with jurisdiction over the criminal offense under investigation.

7.     Affiant asserts this Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, this Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

   a.     In this case, and as will articulated below, certain criminal acts occurred on McConnell Air Force Base (namely, violations of 18 U.S.C. § § 2241(a) and 2251). McConnell Air Force Base (MCAFB) is a United States military base located in Wichita, Kansas. The base includes residential housing for military personnel and their families.

   b.     Pursuant to 18 U.S.C. 7(3), this Court has jurisdiction over the offenses (listed in the preceding subparagraph) that may have occurred on MCAFB, including within the residential housing, as such is part of the territorial jurisdiction of the United States.

   c.     Pursuant to 18 U.S.C. 1512(i), this Court has jurisdiction over the § 1512 offense(s), as such conduct was intended to affect an official proceeding in this district.

8.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

9.     Also, pursuant to Title 18, United States Code, Section 2703(b)(1)(A), where such a warrant is obtained, no notice to the subscriber or customer is required to be given.

## DETAILS OF INVESTIGATION

10.     This information set forth below is providing an overview of the investigation conducted to date. It does not include a listing of all investigative techniques employed or even the full and complete results of any of the listed investigative efforts.

11.     In October of 2015, Minor Victim 1 (hereinafter, MV1), born in January 1998 (17 years old on this date), reported to her mother that Random Shane Smith (SUBJECT), born in September 1979, had been sexually abusing her and her twin sister, Minor Victim 2 (MV2) repeatedly over the last six years. MV2 later confirmed MV1's disclosure.

12.     Mother of MV1 and MV2 was a current United States Army Sergeant stationed at MCAFB, living on-base in residential housing with MV1 and MV2.

13.     Within 24 hours of the initial report, the mother of MV1 and MV2 transported them to live with their maternal grandparents in Mendota, Illinois. The minor victims' mother told the grandparents about the allegations, but advised she did not believe them because SUBJECT was impotent and unable to have intercourse. The mother of MV1 and MV2 did not report the sexual abuse allegations to law enforcement, either on-base or off-base.

14.     While residing at the grandparents' residence in Mendota, MV2 received intimidating email messages from **jones_shawn72@yahoo.com**. MV2 knew this email account to be a fictitious/alias account used by SUBJECT.

15.     While residing at the grandparents' residence, both MV1 and MV2 disclosed details relating to their sexual abuse by SUBJECT to their grandparents.

16.     On February 29, 2016, the grandparents reported the sexual abuse of MV1 and MV2 by SUBJECT to Mendota Police Department (MPD). The grandmother reported that MV1 told her that the abuse began as inappropriate touching and petting by SUBJECT, beginning prior to July

of 2009, when SUBJECT had access to MV1 in Maryland. The grandmother reported that both girls told her that, since their arrival to MCAFB, SUBJECT has repeatedly subjected them to sexual intercourse.

17.   The grandmother also provided MPD with a copy of two emails that MV2 received on February 17, 2016 from **jones_shawn72@yahoo.com**.   MV2 told the grandmother that SUBJECT told MV2, prior to her being taken to Illinois, that he would use a fake email address to communicate with MV2. These messages stated:

    a.    "That's why u don't talk to me and what your slut ass was doing. Fucking around with some guy. God I hate you more than anything. Don't bother coming back I never want to see you or hear from you again. Hope you and ur sister both fucking die."

    b.    "I fucking hate you more than anything just fucking die."

18.   MPD officer Jason Stewart contacted AFOSI at MCAFB to report the crimes, as the sexual abuse occurred on-base at MCAFB.

19.   On March 1, 2016, AFOSI Agents Pingree and Inness sent a preservation letter to Yahoo! regarding the **jones_shawn72@yahoo.com** email account.

20.   On March 17, 2016, AFOSI Agents Pingree and Inness interviewed MV1 and MV2 in Mendota, Illinois. Both MV1 and MV2 confirmed and provided additional details regarding SUBJECT's sexual abuse of the minor victims at MCAFB as well as at other locations, including (but not limited to):

    a.    Both girls were afraid of SUBJECT, because of his strength, physical size and military training.

    b.    For MV1, the sexual abuse began in Maryland in 2009, where SUBJECT would kiss and lick MV1. The sexual abuse continued when MV1 moved to North Carolina, where SUBJECT forced MV1 to perform sex acts on him. In North Carolina, SUBJECT began subjecting MV1 to penetrative sexual acts. When MV1 moved to MCAFB in April of 2014, SUBJECT continued to force MV1 to perform sex acts upon, or with, SUBJECT.

    c.     For MV2, in Maryland, she heard SUBJECT trying to persuade MV1 to perform oral sex on him, but did not confront SUBJECT. The sexual abuse of MV2 began later, in North Carolina, where SUBJECT would use his fingers to touch MV2's genitals while she slept. When MV2 moved to MCAFB in April of 2014, SUBJECT continued to sexually abuse MV2, forcing her to perform oral sex while holding and moving her head and subjecting MV2 to penetrative sexual acts.

    d.     The sex acts perpetrated by SUBJECT while in Kansas occurred on-base at the residence of MV1 and MV2.

21.    During the interview by AFOSI, MV1 also disclosed that SUBJECT took nude pictures of her genitals, as well as pictures while he engaged in sexual acts with her. She reported he used his cell phone to do this, and that the pictures were taken inside MV1's residence on MCAFB.

22.    During the interview by AFOSI, MV2 identified the email address **jones_shawn72@yahoo.com** as an email address used by SUBJECT to communicate with MV2 without other family members (her grandmother) being aware of the communication.

23.    MV1 also stated SUBJECT created a fictitious online account to communicate with her sister, MV2, so that others would not know that Subject was in contact with MV2. MV1 identified SUBJECT as using the fictitious account to discuss the sexual acts performed in the past with both minor victims.

24.    Both MV1 and MV2 reported SUBJECT used Facebook to find out information about them.

## BACKGROUND CONCERNING EMAIL

25.    In consultation with other agents and in my experience, I have learned the following relative to Internet-based e-mail service providers (ESP):

    a.     There are a variety of companies, such as Microsoft, AOL, Google, and Yahoo!, which offer a variety of Internet-based services to the general public, including e-mail services, file storage, and financial transaction services.

b.      In relation to e-mail services, these e-mail service providers allow subscribers to obtain e-mail accounts at their domain names, such as: hotmail.com and live.com (Microsoft); aol.com (AOL, Inc.); gmail.com (Google); and yahoo.com, ymail.com and sbcglobal.net (Yahoo!). Individuals may obtain, or subscribe, to an account by registering with the ESP.

c.      During the registration process, these ESPs ask subscribers to provide basic personal information. This information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). However, the ESPs typically do not independently verify the information provided by the subscribers. Some ESPs require secondary contact information, such as an alternate e-mail address or telephone number, to confirm that the subscriber is in fact a human user or to provide additional security features for the account, such as a text notification to a phone number when logging into the account from a new device or computer. This holds true for Yahoo!, the provider in this case.

d.      Generally, ESPs keep and maintain the account registration information, including the information entered by the subscriber, the Internet Protocol address (IP address) used at the time of registration, the date of the account's creation and length of service, and associated secondary/security accounts. ESPs also retain certain transactional information about the use of each account on their systems, including records of log-in (i.e., session) times and durations and the associated IP address for each log-in, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via an associated website), and other log files that reflect usage of the account. Yahoo!, the provider in this case, retains this type of information.

e.      In some cases, subscribers will communicate directly with the ESP about issues relating to the subscriber's account, such as technical problems, billing inquiries, or complaints about (or from) other users. ESPs typically retains records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or subscriber as a result of the communications. This holds true for Yahoo!, the provider in this case.

f.      With regard to e-mail, when the subscriber sends an e-mail, it is initiated at the subscriber's computer, transferred via the Internet to the ESP's servers, and then transmitted to its end destination. The ESP often saves a copy of the e-mail, either as a "draft" message, a "sent message," or as a message pending delivery. Unless the sender of the e-mail specifically deletes the e-mail, the e-mail can remain on the ESP's server indefinitely. This holds true for Yahoo!, the provider in this case.

g.   Likewise, an e-mail that is sent to a subscriber will be stored in the subscriber's "mail box" on the ESP's respective servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on the ESP's servers indefinitely.  This holds true for Yahoo!, the provider in this case.

h.   Aside from the content of a message, a "sent" or "received" e-mail typically includes the source and destination addresses, the date and time at which the e-mail was sent, and the size and length of the e-mail.  A "draft" email may include similar information.  This holds true for Yahoo!, the provider in this case.

i.   Typically, ESP subscribers can also store files, including e-mails, contact lists, calendar data, pictures, and other files, on servers maintained and/or owned by the ESP.  Again, this holds true for Yahoo!, the provider in this case.  The full list of services available to Yahoo! subscribers is listed at https://info.yahoo.com/privacy/us/yahoo/products.html.  These include, but are not limited to: Yahoo Mail (email); Yahoo Contacts (address book); Yahoo Groups; Yahoo Calendar; Flickr (photo-sharing); Yahoo Wallet (credit card and billing information storage); and Yahoo Notepad.

26.   In my training and experience, evidence of who was using an e-mail account, or "user attribution evidence," may be found several sources associated with any given email account.

27.   For example, email providers typically log the IP addresses from which users access the email account along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information is important, as it may tend to either inculpate or exculpate the subscriber for the account.

28.   Aside from log-in information, other sources of "user attribution" evidence may include the account registration information, secondary email accounts, telephone numbers, contact or address books, credit card information, bookmarks, and email content, including the attachments to e-mails (such as pictures or documents).

29.   For example, while the registration information may reveal evidence associated with a particular individual when the account was created (such as a phone number), the actual email

content shows the continued usage by the same individual (such as signature lines in an email, or a photo attachments bearing time/date information, or a receipt for a purchase associated with the individual's credit card).

30.     Likewise, content stored in the user's account may provide details identifying the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent as an attachment to an email, such as GPS metadata or the physical surroundings depicted).

31.     Thus, information obtained from these various components of an email account as can provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.

32.     Put another way, "user attribution" evidence reflects the "indicia of occupancy" that would be sought during the execution of a search warrant at a physical residence.

33.     Review of the content may also provide relevant insight into the email account user's state of mind as it relates to the offense under investigation.  For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

34.     In instances where the email address has been created for the express purpose of disguising one's identity to facilitate criminal conduct (such as in this case), the account as a whole may be considered an instrumentality of the crime and subject to seizure.

## BACKGROUND RELATED TO PROVIDER'S RESPONSES

35.     When served with a search warrant for electronic communications, a provider, such as Yahoo!, will send the contents of specified email account to the investigating agency, usually on a CD or DVD, for the investigator to review.

36.     The information provided reflects a snapshot of the account at a particular moment in time.  In this regard, as to the contents, the ESP only provides what is located within the account at the time of the preservation letter or search warrant.   In this regard, the "entire" account reflects only what has been left on the ESPs servers at a particular moment in time – **it may not, and likely is not, the entire account containing every email since the account's creation.**  In this regard, a request for a "date range" of content would be conceptually inaccurate and confusing.

37.     The ESP can copy the contents of the account because that is within their expertise.  Though the provider affirms that the records relate to the specified email account, the provider does not and will not undertake the examination of the contents of an email account to make a determination as to what is relevant or irrelevant to the investigation, or to determine what may or may not be privileged information.  Generally, and in this case particularly, the provider is not familiar with the investigation and is not in a position to identify the victim(s) or subject(s) of the investigation.

38.     The ESP is neither qualified nor trained to search the account as would a law enforcement officer. Only a trained agent, familiar with the facts of the case can determine what items should or should not be seized. An untrained ESP employee is likely to seize too much to avoid any suggestion that 1) s/he has interfered with a legitimate law enforcement investigation

or 2) has defied a court order.  For these reasons, your Affiant requests the provider reproduce the records listed in Section 1 of Attachment B, for the email account listed in Attachment A.

39.     Because the nature of the criminal venture involves avoiding detection, it is typical for individuals to use code in communications, to mislabel attachments, or to otherwise disguise communications about the criminal venture.  As noted above, evidence of who was using the e-mail account may be found in a variety of locations.  These include:  the actual e-mail correspondence in the account, because the content will sometimes include reference to names, either in salutations, signatures, or in the message content itself; attachments to e-mails, including pictures and files, because the content of those may include identifiers such as self-portrait or depicting other physical identifiers, or textual references that include names or addresses, such as an invoice or receipt; address books, contact or buddy lists, because these may show familial contacts or other associates who can identify the user of the email account. Sometimes, an email that appears unrelated on its face (such as a receipt for an internet purchase) provides information (such as a name or credit card number) that identifies the user of the account.  For these reasons, the law enforcement investigator must be allowed to review all of the contents of the account, for the evidence listed in Section 2 of Attachment B.  This is particularly true where the account itself appears to have been created solely for engaging in criminal conduct, as in this case.

## BACKGROUND ON CHILD PORNOGRAPHY OFFENDERS

40.     Based on my training and from consultation with other agents experienced in Child Pornography investigations, I know that offenders who have a sexual interest in children frequently collect, trade, and store depictions of child engaged in sexual acts, i.e., child pornography.

41.     Additionally, individuals who produce child pornography will frequently distribute or trade images that they have produced.  Sometimes, this is done with other offenders, either in exchange for other child pornography, or for access to larger on-line communities of sexual offenders.  Sometimes, the produced images are used to entice other minors into producing additional child pornography.  In almost all cases, however, the producer retains copies of the images for their own sexual gratification.

42.     Because of the perceived security and anonymity of Internet-based email accounts, as well as their relatively immediate accessibility via a variety of mobile devices, some child pornography producers maintain their collections in on-line storage or in email accounts.  This allows them to avoid detection by family members or friends who would not have access to a password-protected account.  The use of a fictitious account provides an additional barrier of detection.  Additionally, it allows them to more readily engage in trading activities.

43.     In this case, the SUBJECT has engaged in activities consistent with this type of offender behavior.  He has used a cellphone device, as well as a fictitious email account, in the course of the production of child pornography.

## CONCLUSION

44.     Based on the foregoing, your Affiant believes that a historical search of e-mails sent, received, drafted, and deleted, as well as attachments to these e-mails, in the email account **jones_shawn72@yahoo.com**, will divulge information that is likely to show evidence of violations of:

  a.      Title 18, United States Code, 1512(b)(3) and (d), relating to tampering with a witness or victim;

  b.      Title 18, United States Code, Section 2241(a), relating to aggravated sexual abuse committed by use of force;

      c.     Title 18, United States Code, Section 2251, relating to the production of child pornography.

45.    Your affiant further asserts that there is probable cause to believe that such evidence is located on the computer systems of Yahoo! Inc., located at 701 First Avenue, Sunnyvale, California 94089, within the e-mail account of **jones_shawn72@yahoo.com**.

46.    Wherefore by this affidavit and application, your affiant request that the Court issue a search warrant which would allow agents to seize the e-mail and other information stored on the Yahoo! Inc. system for the e-mail account identified in this affidavit, as further described in Attachments A and B.

 

J. Reese Popst
Special Agent, FBI

Subscribed and Sworn before me this ___ day of ___, 2016

The Honorable Gwynne E. Birzer
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**
**(Yahoo!, Inc.)**

**LOCATION TO BE SEARCHED**

This warrant applies to information associated with the following e-mail accounts:

   **jones_shawn72@yahoo.com**

 that is stored at premises owned, maintained, controlled, or operated by **Yahoo!, Inc.,** a

company headquartered at **701 First Avenue, Sunnyvale, CA 94089**.

**ATTACHMENT B**
**(Yahoo!, Inc.)**

**ITEMS TO BE SEIZED**

**I.    Information to be disclosed by Yahoo!, Inc.:**

To the extent that the information described in the affidavit is within the possession, custody, or control of **Yahoo!, Inc., Yahoo!, Inc.** is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all e-mails stored in the account, including copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.    All records or other information regarding the identification of the e-mail account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files.

**II.   Information to Be Seized By the Government:**

All information described above in Section I that constitutes contraband, fruits, evidence and instrumentalities of violations of Title 18, United States Code § § 1512, 2241(a), and 2251, including, for the account or identifier listed on Attachment A ("Location to Be Searched"), information pertaining to the following matters: 

a.    Data or content tending to show the user of the account, including but not limited to subscriber information, IP logs, alternative/secondary email or telephone number contacts, address books, friend-lists or buddy-lists, headers, salutations, and email content referencing the user or other identifier information such as names, nicknames, credit card numbers, phone numbers, self-portraits, or physical addresses;

b.      Data or content related to social networking profiles or alternate accounts which may have been used to contact, or view information associated with, MV1 and MV2, from January 2009 to present;

c.      Data or content related to the production, receipt, possession, or distribution of child pornography, from January 2009 to present;

d.      Data or content relating to the sexual abuse of minors, from January 2009 to present; and

e.      Data or content tending to show a plan, scheme, or intention to communicate with or influence any witness, relating to the sexual abuse of MV1 and MV2, from January 2009 to present.